UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS HEAPHY, JR.,<br>    *Defendant*. | No. 3:17-cr-00168 (JAM)<br>No. 3:18-cr-00032 (JAM) |

**ORDER DENYING MOTION FOR SENTENCE REDUCTION**

Thomas Heaphy, Jr. is a prisoner of the Federal Bureau of Prisons ("BOP"). In light of the rapidly spreading coronavirus ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction of his sentence of imprisonment to allow for his release. I will deny the motion.

### BACKGROUND

On May 7, 2018, I sentenced Heaphy to an effective sentence of six years of imprisonment and an order for restitution of $6,738,539 for his numerous victims, following his guilty plea to two counts of conspiracy to commit mail and wire fraud and one count of tax evasion.[1] Doc. #34. He began serving his sentence over two years ago in July 2018, and he is scheduled to complete his term of imprisonment nearly three years from now in August 2023.

Heaphy is 45 years old. He states that his medical history includes "preexisting conditions of asthma, kidney stones, and the potentially lingering effect of a 2017 surgery" on his lungs that place him "at grave risk of serious illness and death" due to COVID-19. Doc. #40 at 1. Heaphy offers medical records that confirm some history of asthma and kidney stones, but

---

[1] Heaphy's convictions are from two separate cases, both captioned *United States v. Thomas Heaphy, Jr.*, with docket Nos. 3:17-cr-00168 (JAM) and 3:18-cr-00032 (JAM). Heaphy has filed identical compassionate release motions on the docket for both these cases. This order addresses both motions, but for simplicity citations to docket filings throughout this order refer only those on docket No. 3:17-cr-00168 (JAM).

1

that do not diagnose a chronic kidney disease or ongoing complications due to his 2017 surgery. Doc. #41-1 at 2; Doc. #41-2 at 36-37; Doc. # 41-4 at 2.

Heaphy is serving his sentence at the high security correctional institution USP Lewisburg in Pennsylvania. According to the BOP's website, USP Lewisburg has about 1,268 inmates, which includes 253 inmates at the adjacent minimum security camp.[2] The BOP states no inmates at USP Lewisburg are currently COVID-19 positive, although nine staff members are, and that 84 inmates and one staff member have "recovered" from COVID-19.[3] The BOP has instituted procedures to reduce the risk of COVID-19 spreading at USP Lewisburg, including sending home staff with signs or symptoms of illness. Doc. #44 at 19.

Heaphy has filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), along with a supplemental memorandum in support. Doc. #40. The Government has filed an opposition memorandum. Doc. #44. The parties do not dispute that Heaphy has properly exhausted the administrative procedures required before the filing of his motion for release. Doc. #40-1 at 2; Doc. #44 at 15.

## DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to this case.

*Statutory and regulatory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

---

[2] *See* Federal Bureau of Prisons, USP Lewisburg, available at https://www.bop.gov/locations/institutions/lew/ (last accessed September 21, 2020) [https://perma.cc/W77A-36HE].
[3] *See* Federal Bureau of Prisons, COVID-19 Coronavirus, COVID-19 Inmate Test Information, available at https://www.bop.gov/coronavirus (last accessed September 21, 2020) [https://perma.cc/5D2F-2CKF]; *see also* Doc. #44 at 19 (citing the same source of data).

Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Hill*, 2020 WL 2542725, at *1 (D. Conn. 2020).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion for a sentence reduction. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[4] The statute does not further define this term but it instructs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Ibid.* Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018). The commentary provides, for example, that "extraordinary and compelling reasons" exist if the

---

[4] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of prisoners who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Ibid.* cmt. n.1(A). "Family circumstances" such as the "death or incapacitation of the caregiver of the defendant's minor child or minor children" may amount to extraordinary or compelling reasons. *Ibid.* cmt. n.1(C)(i) (2018). The commentary further provides for a catch-all "Other Reasons" that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to bring them into conformity with the First Step Act's authorization for defendants to bring their own motions after exhausting administrative procedures. Therefore, to the extent that the Guidelines commentary purports to vest authority solely with the BOP to make a determination of "Other Reasons," this delegation is no longer exclusive; courts also have independent authority to decide whether there are "Other Reasons" that amount to "extraordinary and compelling reasons" to grant a motion for sentence reduction. *See Hill*, 2020 WL 2542725, at *1 (citing cases).

Beyond a court's determination as to whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime,

protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a). In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

### *Factors applying to Heaphy*

I first address whether Heaphy has shown "extraordinary and compelling" reasons that could warrant a sentence reduction. He alleges two primary reasons for a sentence reduction: (1) the risk that COVID-19 and his conditions of confinement pose to his health; and (2) unforeseen challenging "family circumstances" because his wife has to both work and take care of their child while schools are closed or unsafe due to COVID-19. Doc. #40-1 at 3-8.

There is no doubt that the COVID-19 pandemic is extraordinary, having killed more than 190,000 people in the United States in recent months. But Heaphy fails to show that his various health issues place him at an appreciable risk of contracting COVID-19, much less that he is particularly vulnerable to the virus's most lethal effects. Heaphy states that "his preexisting conditions of asthma, kidney stones, and the potentially lingering effect of a 2017 surgery" on his lungs place him "at grave risk of serious illness and death" due to COVID-19. Doc. #40 at 1. But the evidence Heaphy offers does not establish that he is particularly vulnerable to COVID-19, such as through a diagnosis with one of the conditions that the Centers for Disease Control and Prevention ("CDC") has identified as a particular risk factor for COVID-19.[5]

First, the medical records Heaphy submits note he has asthma, but do not indicate its severity, simply stating "Asthma … ? allergy related." Doc. #41-1 at 2. Even if Heaphy could

---

[5] *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), "People with Certain Medical Conditions," last updated September 11, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed September 21, 2020) [https://perma.cc/Y8EC-Z43A].

establish he has moderate to severe asthma, it would only signify that Heaphy "might be at an increased risk for severe illness from COVID-19" under the CDC's guidelines.[6]

Second, while Heaphy's medical records include treatment records for removal of kidney stones in August 2019 and note a "history" of related issues, Doc. #41-2 at 36-37, they do not diagnose chronic kidney disease. As Heaphy's motion concedes, his "results for kidney function appear to be in the normal range" and there is no established medical link between kidney stones and chronic kidney disease. Doc. #40-1 at 4. Although the CDC states "chronic kidney disease of any stage increases your risk for severe illness from COVID-19," there is not a specific risk factor related to a history of kidney stones.[7]

Third, Heaphy does not establish that he has any lingering effects on his lungs from a prior surgery, let alone that they put him at a unique risk to COVID-19. Heaphy had a medical procedure in 2016 to remove a spinal tumor and suffered from atelectasis on the lower right lobe of his lung. Doc. #41-4 at 2-3. But as his motion concedes, the current status of this condition is not known, and the "literature states that '[m]ild atelectasis may go away without treatment.'" Doc. #40-1 at 5. As the Government notes, the doctor conducting Heaphy's 2017 follow-up scan noted he is "functioning normally" and "no other intervention is warranted." Doc. # 41-4 at 2; Doc. #44 at 12. In sum, Heaphy's alleged medical vulnerabilities are not of the degree that they constitute extraordinary and compelling grounds for a sentence reduction.[8]

Furthermore, there are no reported active COVID-19 cases among inmates at USP Lewisburg, and no reported deaths, although 84 inmates have recovered and nine staff members

---

[6] *Id*.
[7] *Id*.
[8] In the petition for compassionate release form Heaphy completed on April 7, 2020, he noted he suffered from "respiratory system issues (COPD) as well as hypertension." Doc. #40-2 at 2. However, these conditions are not reflected in the medical history records Heaphy provides and the motion submitted does not claim he suffers from them, so I do not consider them here.

are currently positive. By contrast, Heaphy seeks to be released to East Moriches in Suffolk County, New York, which has had more than 46,000 confirmed cases of COVID-19 and more than 2,000 deaths.[9] As of September 19, 2020, Suffolk County has 51 new positive tests and a positivity rate of 6.0 percent.[10] All in all, Heaphy has not shown that the risk he faces from COVID-19 while imprisoned at USP Lewisburg constitutes an extraordinary and compelling reason for his release from imprisonment.

Heaphy also argues that a sentence reduction is appropriate because of his "family circumstances," since his wife has to both work and take care of their child while schools are closed or unsafe due to COVID-19. Doc. #40-1 at 6-8. But as Heaphy concedes, his family circumstances do not involve the death or incapacitation of his child's caregiver, which is the circumstance the Sentencing Commission guidelines recognize may provide extraordinary and compelling reasons for a sentence reduction. Doc. #40-1 at 8. And as the Government notes, the challenges Heaphy's wife faces balancing work and caregiving—while serious—are similar to the challenges many parents face during the COVID-19 pandemic and do not amount to extraordinary and compelling circumstances. Doc. #44 at 2.

Turning to the sentencing factors under 18 U.S.C. § 3553, Heaphy played a major role in a massive fraud scheme causing millions of dollars of losses to thousands of investors. Even after Heaphy learned of investigation of his prior scheme, he launched a new venture that defrauded additional investors. *See* Doc. #37 at 28. After considering all of the sentencing factors, I

---

[9] New York State Department of Health, "NYSDOH COVID-19 Tracker: Test Results by County," last updated September 20, 2020, available at https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-TableView?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n#/views/NYSCOVID19%2dTracker/NYSDOHCOVID%2d19Tracker (last accessed September 21, 2020); New York State Department of Health, "NYSDOH COVID-19 Tracker: Fatalities," last updated September 20, 2020, available at https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last accessed September 21, 2020); *see also* Doc. #44 at 19 (citing the same source of data).
[10] *Id.*

conclude in light of Heaphy's record that the purposes of sentencing—including just punishment—would not be served if he were released at this time with about half of his sentence remaining to be served.

## CONCLUSION

For the reasons set forth above and for substantially the reasons stated in the Government's opposition memorandum, the motion of defendant Thomas Heaphy, Jr. for a reduction in sentence is DENIED. Doc. #40.

It is so ordered.

Dated at New Haven this 21st day of September 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge